# THOMAS J. SHRYOCK et al. *vs.* HENRY C. HENSEL AND J. E: ECKSTINE.

*Res Adjudicata—Decree Enforcing Mechanics' Lien Against Property Not an Adjudication as to Ownership of Land.*

In 1899 certain parties filed mechanics' liens against designated houses alleging that one H. was the owner or reputed owner of the land and one E. the builder. A bill in equity to enforce the lien claims alleged that H. was the owner or that he with others were the owners or reputed owners. In H's answer he asserted that he was the owner and E's answer made no statement as to ownership. In that case some of the lien claims were enforced and others were disallowed, but the question of the ownership of the land was not in issue, and the final decree made no mention of it, although it was assumed in the opinion of the Court that H. was the owner. H. appeared upon the land records to be the owner. Code, Art. 63, sec. 19, provides that in lien claims the name of the owner or of the reputed owner must be stated, and the proceeding to enforce a lien under the statute is *in rem.* Some of the defeated lienors in that case filed the bill in this case to vacate as fraudulent the conveyance of the land to H. and to have the property adjudged to belong to E. and for a sale of it for distribution among the creditors of E. *Held,* that the precise issue in the former case was whether the claimants were entitled to liens on the property and not whether it was truly owned by H.; that the decree therein was not an adjudication as to title and the plaintiffs are consequently not precluded by that decision from maintaining the bill in this case.

Code, Art. 63, sec. 19, provides that a mechanic's lien claim shall set forth the name of the owner or reputed owner of the building. Section 11 provides that when the contract for work or materials shall have been made with a person other than the owner of the lot, notice must be given to the owner of the intention to claim a lien. *Held,* that these sections must be construed together and that a lien is not invalid because the notice was given to a person described as the reputed or ostensible owner.

When such notice is given to a person who appears from the land records to be the owner the lien is not lost because it is subsequently ascertained that some other person is the real owner.

Under a bill to enforce a mechanic's lien, after notice to the reputed owner of the building, the subject-matter adjudicated is the lien upon the *rem,* but the ownership of the property is not necessarily determined.

Appeal from the Circuit Court for Baltimore County (Fowler, C. J., and Burke, J.)

The cause was argued before McSHERRY, C. J., PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Alex. H. Robertson* and *J. Fred. Requardt,* for the appellants.

The acts or admissions of a party will not create an estoppel *in pais* unless they were intended to influence another, and did influence him, and denial of them will operate to his injury. *Homer* v. *Grosholz,* 38 Md. 520. "It is not sufficient to charge that the plaintiff did certain acts, but it must also be charged that such acts or admissions influenced the other party in his conduct. *Bramble* v. *State, &c.,* 41 Md. 435.

The question therefore is pertinent, in what manner or to what extent did Hensel act, or how was he influenced or induced to act either to his injury or his benefit by the admissions made by the assignees in the *Mechanics' Lien case?* If he was the *bona fide* owner of the property at the time of the lien trial, he is *now,* if he was *not,* no act or admission of the appellants in the former proceedings could make him the owner; especially when the admissions or rather the statements of the assignors in the lien claim, and of these appellants in their briefs filed in such case were but such as were required of them by the Mechanics' Lien Statute.

Again, looking at the plea from the view point of *res adjudicata,* something more than mere admissions made incidently in a legal proceeding is required. In such case there should be the same parties, and there should be an issue found in favor of the person invoking the doctrine. When a matter has once passed to final judgment "It has become *res adjudicata,* and the same matter between the same parties cannot be reopened or subsequently considered." 21 *Am. & Eng. Ency. of Law,* 128, 1 ed.

We assert that in neither of these requirements, *i. e.* identity of parties or the adjudication of the subject-matter, (issue) does the plea measure up to the necessary standard, and to make it available by the appellee as matter of defense. The parties are not the same as in the *Mechanics' Lien case;* these appellants were mere assignees in the former case, in this case

they are suing as individuals in their own right. A person may be an executor and at the same time a trustee by virtue of one and the same instrument; yet such person's status as executor is held to be quite distinct from that of trustee. *Abell's case*, 79 Md. 94; *Gable* v. *Carey*, 51 Md. 352; *Woolley* v. *Price*, 86 Md. 176.

Neither was there an issue, or a finding direct or collaterally, in favor of the appellees which they can invoke in the present case. The issue in the *Mechanics' Lien case* was lien *vel non*. The question of ownership in Hensel, or in fact in any one else, was never put in issue and never passed upon. For the purposes of the *Mechanics' Lien case* it was conceded and had to be conceded that title was in Hensel and therefore the Court was not called upon to pass upon the question of ownership, as an issue. It was not required that ownership should be first determined before that of lien *vel non*, could be decided.

To constitute an estoppel by a former judgment, the precise point to create the estoppel must have been put in issue and decided. *Smith* v. *Sherwood*, 4 Conn. 276; *Abbe* v. *Goodwin*, 7 Conn. 377, 383. To ascertain whether or not a former judgment is a bar to present litigation, the true criterion is found in answer to the question, was the same vital point put directly in issue and determined. *Howard* v. *Kimball*, 65 Me. 330. Facts in controversy, bearing such relation to the judgment rendered, are the only ones which can in any legal sense be said to have been "litigated" in any judicial proceeding. *Eastman* v. *Symonds*, 108 Mass. 569.

*C. Dodd McFarland,* for the appellees.

1. It was conceded by all the parties in the case of *Johnson et al.* v. *Hensel et al.*, 94 Md. 729, and decided by the Circuit Court for Baltimore County, and this Court, that Henry C. Hensel, is the owner of the lots of ground and the improvements thereon, the subject-matter in this case The precise point raised in this case, as to ownership, was decided in the former case, and against the contention now made by plaintiffs, in this case. All the parties in this case were par-

tics to the former case.   The question as to ownership is *res adjudicata*.   There was an application of the judicial mind to the precise question, *Alexander* v. *Worthington*, 5 Md. 471, 489; *Carstairs* v. *Cochran, ante* p. 488.

2.. The decision of this Court in the case of *Hensel* v. *Johnson et al.*, 94 Md. 729, is conclusive, not only of all matters in that case, but of all matters that properly belonged to it, and which might have been brought into it, but were not.   The question whether Eckstine was the real owner of the property, as the plaintiffs in this case now allege, might have been brought into the former case by them, and submitted to the determination of the Court.   The validity of the deeds to Hensel of the lots of ground, might have been inquired into and a decision rendered thereon, in the former case.   *State* v. *Brown*, 64 Md. 199, 203, 204; *Royston* v. *Horner*, 75 Md. 557, *Same* v. *Same*, 86 Md. 249, 252; *National Marine Bank* v. *Heller*, 94 Md. 213; *Trayhern* v. *Coulburn*, 66 Md. 277, 278, 279; *Albert* v. *Hamilton*, 76 Md. 309; *Greenup* v. *Crooks*, 50 Ind. 410, 419; 1 *Van Fleet on Former Adjudication*, 40; *Ballman* v. *Heron*, 169 Pa. St. 510.

The principle of *res judicata*, extends not only to the questions of fact and of law, which were decided in a former suit, but also to the grounds of recovery or defense, which might have been, but were not presented.   *Beloit* v. *Morgan*, 7 Wallace, 622; *Royston* v. *Horner*, 75 Md. 557, and 86 Md. 249.

3. It was essential to determine in the former case who was the owner of the property, in deciding the validity *vel non* of the liens and having decided that Hensel was the owner such determination is conclusive on the issue in this case.   *Brooke* v. *Gregg*, 89 Md. 239.   Notice had been served by plaintiffs on Hensel, as owner of their intention to claim a lien, under the provisions of Art. 63, sec. 11, of the Code.   The validity of their liens depended upon the service of notice of intention to claim a lien.   Plaintiffs relied on that notice to sustain their liens.   The question as to ownership, now controverted, was essential to the decision rendered in the former case.   It was necessary to give the plaintiffs standing in Court,

then it should be proved or admitted that Hensel was the owner, and no other.    Section 11, of the mechanics' lien law, provides for service of notice on the owner or his agent, not owner or reputed owner, as may be set forth, when the claimant files his lien.    It was essential for the Court to find that Hensel was the owner at the time of notice, before it would proceed to consider, whether it was served in time ; it was a preliminary question.    The Court would first find the fact of ownership, conceded or proved, before it would take another step in deciding the case.    The plaintiffs served notice of their intention to claim a lien on Hensel, and asked this Court to declare their liens valid, founded on his admission of ownership. He was entitled to such notice, to enable him to refuse payment to the contractor for work done and materials furnished by him under the contract, between them.    Plaintiffs having asked this Court to declare their liens valid, on the ground of such ownership, they will not be now heard to deny it.

*4.  The judgment or decree in cases under the mechanics' lien law is in rem and not in personam and declares the status of the property.*    *Gault* v. *Wittuan*, 34 Md. 35; *Smith* v. *Shafer*, 50 Md. 234; *Kelly* v. *Gilbert*, 78 Md. 438; *Real Estate Co.* v. *Phillips*, 90 Md. 515, 525.

5. Plaintiffs will not be permitted to occupy inconsistent positions.    In the case of *Johnson et al.* v. *Hensel et al.*, they alleged Hensel was the owner of the houses on Woodland avenue.    In this case they allege that Eckstine is the owner.

A party cannot take inconsistent positions ; for instance, he cannot waive a forfeiture for the non-payment of instalments on a sale of goods and proceed to enforce the forfeiture.    *Cole* v. *Hines*, 81 Md. 476, 32 L. R. A. 455; *Bolton Mines Co.* v. *Stokes*, 82 Md. 50; *Edes* v. *Garey*, 46 Md. 41; *Reichard* v. *Izer*, ante p. 451; *Hall* v. *McCann*, 51 Md. 351; *Fisher* v. *Boyce*, 81 Md. 52; *Scanlon* v. *Walshe*, 81 Md. 132.

Plaintiffs in the case of *Johnson et al.* v. *Hensel et al.*, alleged that Hensel was the owner of the houses on Woodland avenue, and the case went to final decree.    Plaintiffs now allege that he never was the owner of said houses.    They will

not be permitted to occupy before the Court, these inconsistent positions.

6. If plaintiffs did not know when they filed their liens, to-wit: on December 20th, 1899, December 23rd, 1899, and March 28th, 1900, Eckstine was the owner, and not Hensel, but learned it any time before the opinion was filed by this Court, on the 6th of March, 1902, they had the right to amend their lien, and set forth therein, that Eckstine was the owner. Mechanics' liens shall be amended, from time to time and at any time, commencing with the claim or lien and extending to all subsequent proceedings, as may be necessary and proper. *Code*, Art. 63, sec. 41; *Rust* v. *Chisolm*, 57 Md. 376, 383, 384; *Real Estate Co.* v. *Phillips*, 90 Md. 515, 525; *Reindollar* v. *Flickinger*, 59 Md. 469, 472.

7. The law is adverse to multiplying suits. Courts will not permit one to subject another to vexatious suits. Litigations must end.

The question whether Hensel or Eckstine owned the property, might have been brought into and decided in the former case, and to allow that question to be brought into another case, between the same parties, on the same cause of action, would be in violation of the principle, that the law is adverse to multiplying suits. In *Bolton Mining Co.* v. *Stokes, supra,* this Court said: "The law is adverse to multiplying suits; if a party has a choice between two actions upon the same demand, and he selects one which is decided by a competent tribunal, either for or against him, as a general rule he will not be permitted to resort to the other." See also *Beall* v. *Pearre, adm.*, 12 Md. 366; *Walsh* v. *C. & O. Canal Co.*, 59 Md. 427; *Edes* v. *Garey*, 46 Md. 24; *Fisher* v. *Boyce*, 81 Md. 46; *Keedy* v. *Long*, 71 Md. 385; *Bach* v. *Olmstead*, 78 Md. 132; *Hambleton* v. *Glenn*, 72 Md. 356, 357.

PEARCE, J., delivered the opinion of the Court.

This is a creditor's bill filed by Thomas J. Shryock & Company, The German Bank of Baltimore City, N. W. James & Company, Edward L. Kaufman & Company and the

National Mantel and Tile Company of Baltimore City, against Henry C. Hensel and J. Edmund Eckstine. The prayer of the bill is for a decree setting aside as fraudulent and void, certain conveyances of real estate from Charles G. Hill and wife and J. Edmund Eckstine to Henry C. Hensel, declaring the property described in said deeds to be the property of J. Edmund Eckstine, and directing the sale of said property, and the distribution of the proceeds of such sale among the plaintiffs and the other creditors of J. Edmund Eckstine.

To this bill the defendants filed a plea of *res adjudicata*, and an answer supporting said plea. This plea set out with much fulness the mode in which Hensel acquired title to the land described in said deeds, and the substance of a contract between Hensel and Eckstine for the erection by Eckstine of a number of houses on said ground, and the creation of indebtedness from Eckstine to sundry persons for materials furnished and work done upon said houses. It also set out the filing of lien claims by the parties last mentioned, and the filing of a bill in equity to enforce these liens, resulting in a decree out of which grew the alleged adjudication. The case before us was set down for argument upon bill, plea and answer, and upon hearing, the plea was allowed by the Circuit Court for Baltimore County in equity, and the plaintiffs refusing to join issue upon the averments of the plea, or to take testimony in reference thereto, the bill of complaint was dismissed, and from these orders this appeal is taken.

A brief outline of the proceedings in the former cause will be necessary to the proper understanding of the plea in this case.

In November, 1899, Edward L. Kaufman & Company together with several other parties filed a bill against Hensel and Eckstine to enforce certain mechanics' liens claimed by them against the land now in question and certain houses erected thereon by Eckstine, for work done and materials furnished Eckstine, in the erection of these houses. This bill alleged that Hensel was, at the time of the doing of the work and the furnishing of the materials, the owner of said ground

and the houses thereon, and that Eckstine was the builder and contractor, for whom the work was done, and to whom the materials were furnished.   It also alleged that John Eckstine, Charles G. Hill, William C. Robinson, Alice A. Harden, trustee, and the Baltimore Mutual Aid Society, claimed to be owners or reputed owners of said land and houses, or to have some interest therein, and they were therefore made parties defendants : Also, that the firm of F. O. Singer & Company, and the firm of Myohl & Luken claimed to have mechanics' liens against the same property, and they also were made parties defendants.

Hensel answered, alleging that he was the owner of the ground and houses, and denying that any of the parties to the cause had any mechanics' lien claims against the property.

· J. Edmund Eckstine answered that he was the contractor and builder of the houses, but that all mechanics' lien claims against them had been paid.   He did not state who was the owner or reputed owner.

John Eckstine and Charles G. Hill answered, each disavowing any interest in the property.

Wm. C. Robinson, Alice A. Harden, trustee, and the Baltimore Mutual Aid Society, answered, each claiming to hold ground rents or mortgages against part of the property in question, but claiming no other interest therein.

Myohl & Luken answered, alleging that they held a mechanics' lien claim for $2,713.77 against said houses, and that J. Edmund Eckstine was the contractor and builder of said houses, and "that the defendant, Henry C. Hensel, was the *ostensible* owner of the said dwelling houses and the ground on which they were built, but that both the said Eckstine and Hensel were, and are now, interested in said houses and ground."

F. O. Singer & Company answered in the same exact terms as to Eckstine and Hensel, and set up a mechanics' lien claim of $1,272.50.

A great mass of testimony was taken relating to the several mechanics' lien claims, and after argument, an opinion and

decree was filed, sustaining all the lien claims of the parties to the bill, except that of the National Building and Supply Company, and decreeing a sale of the land and houses for the payment of the claims allowed. The opinion was filed January 22nd, 1901, and on the 16th of January, 1901, a petition was filed by Thomas J. Shryock & Company, The German Bank of Baltimore City, and N. W. James & Company, setting forth the assignment to them in certain proportions by Myohl & Luken, of their lien claims, and the decree passed February 2nd, 1901, recognized this assignment and directed payment to the assignees accordingly.

Hensel filed as an exhibit with his answer to a petition for a receiver, which was filed in that cause, an agreement between himself and J. Edmund Eckstine, made April 10th, 1899, for the erection of the five houses in question, in which agreement Hensel is "designated as owner" and Eckstine as contractor, but neither Hensel nor Eckstine, when sworn as witnesses, testified, nor were interrogated, as to the ownership of the land and houses. The opinion states : "It is shown by the evidence in this case that on April 10th, 1899, Henry C. Hensel, the *owner* of certain lots of ground in Baltimore County, entered into a contract with J. Edmund Eckstine, a contractor, by which Eckstine obligated himself to erect within the time limited therein, five houses as specified in the agreement." The opinion also states later, "The claim of the National Building and Supply Company will be disallowed as no notice was given, it appearing that at the time the goods were furnished and the work done, Eckstine was not the *owner* of the property." These are the only references in the opinion to the ownership of the property. The decree does not refer to the ownership at all, but merely provides for a sale of the property "unless the defendants, Henry C. Hensel and J. Edmund Eckstine, pay to the plaintiffs," naming them, the respective sums found due them within thirty days from the date of the decree. On appeal to this Court, that decree was on March 6th, 1902, reversed, the lien claims of the National Mantel and Tile Company, of Edward L. Kaufman & Com-

pany, and of Myohl & Luken being disallowed for reasons not material to this case. Thereupon, on March 21st, 1902, the present bill was filed by the assignees of Myohl & Luken, and by the other rejected lien claimants, for the purpose already stated. It does not appear whether a sale of this property has been made under the former decree, but the only effect of such sale would be to transfer the present controversy to such surplus proceeds of sale as should remain, after payment of the lien claims provided for by the former decree.

It is contended by the appellees that the precise point raised in this case as to the ownership of the property, was decided in the former case, and against the contention of the plaintiffs in this case; that all the parties in this case were parties to the former case, and that the question of ownership is therefore *res adjudicata*.

The appellants, on the other hand, contend that the parties in this case are not the same as in the former case, because there, Shryock & Company, The German Bank of Baltimore, and N. W. James & Company were mere assignees of Myohl & Luken, who were themselves parties to the former suit, while here their assignees sue in their own name and right; that the question of ownership was not in issue in the former case, and that the only issue was *lien vel non*.

As to the identity of the parties to these suits, it would seem to be sufficient to say, that so far as a decree operates as a finality, upon any point involved, it concludes not only the parties, but all those in privity with them, and the evidence shows not only that the claim of Myohl & Luken was assigned to Shryock & Company and the other parties named, before decree passed, but that it was entered to their use on December 27th, 1899, one month after the bill in that case was filed. Therefore if Myohl & Luken would be concluded by the decree in that case, their assignees must be equally concluded, and Kaufman & Company, and the Mantel and Tile Company were themselves parties to the former suit.

Whether the precise question of ownership presented in

this case was expressly decided in the former case, or whether it must be held to have been decided by necessary implication, as essential to the rendition of the decree, must be determined from the requirements in this respect of the statute relating to mechanics' liens, and from the proceedings thereunder in the former case.

Sec. 19 of Art. 63 of the Code, prescribing what shall be set forth in the claim which must be recorded in the Mechanics' Lien Docket, requires the name of "the owner *or the reputed owner* of the building," to be stated, the requirement being in the alternative, and the right, consequently, being the right to use either or both designations, as prudence may suggest. In *Real Estate Co.* v. *Phillips*, 90 Md. 515, the lien claim recorded described the B. & O. R. R. Co. as owner, and one Johns as contractor or builder, and it was sought to amend by charging that Johns and one Lechler were equitable owners. This amendment was allowed, the Court saying : "Can it be possible, the statute itself having given the lienor the right to use, either the name of the owner or the name of the reputed owner, that he should, especially in a Court of equity, and under the provisions of a statute remedial in its nature, be punished by a forfeiture of his claim, because, and only because, he has used the latter instead of the former ?" It is true that sec. 11 of Art. 63, which provides for notice to the owner or his agent of the intention to claim a lien, where the contract for work or materials shall have been made with any person except the owner of the lot or his agent, mentions only the *owner* or his agent, and does not in terms mention the *reputed owner*, but that section must be construed in connection with sec. 19, and so construing them, it cannot be that a recorded lien claim which used one of these terms could be defeated, because in the notice to the owner, the other alternative term was used. The broad alternative right given by section 19 cannot be so limited, qualified or restricted by the language of sec. 11.

In pursuance of this alternative right Kaufman & Company in their notice, and also in their recorded lien claim, desig-

nated Hensel as owner or reputed owner. The notice of the National Mantel and Tile Company was filed with the examiner, but was lost or mislaid. The lien claim recorded however, designated Chas. G. Hill, J. Edmund Eckstine and Hensel, as owners or reputed owners. Both the notice and the recorded lien claim of Myohl & Luken designated Chas. G. Hill, John Eckstine, Henry C. Hensel, Wm. C. Robinson, Alice A. Harden, trustee, and the Balt. Mutual Aid Society, as owners or reputed owners. Both the notice and the recorded lien claim of the Walbrook Coal and Supply Company designated Hensel, John Eckstine, Hill, Robinson and the Mutual Aid Society, as owners or reputed owners. So also in the notices and recorded lien claims of John J. Duffy, James H. Warthen, J. Frank Pearson & Co., and the Balt. Cooperage Co., these being all the remaining lienors in the former case, whether plaintiffs or defendants. We have referred thus carefully to all these lienors, because it is thus shown that not one of them, either in their notice or in their recorded lien claim, named Hensel as absolute owner, and only Kaufman & Co. named him as sole reputed owner. All named either Hensel alone as owner or reputed owner, or Hensel and others as owners or reputed owners. Hensel was the *ostensible owner* in virtue of his deed from Hill and Eckstine, as aptly expressed by Myohl & Luken in their answer to the bill in the former case, and it is said in 20 *Amer. & Eng. Ency. of Law,* 2nd ed., p. 424, that a lien claimant is justified in naming as owner, the person appearing from the public records to be such, and that if a statement in a lien claim, that one is owner, or reputed owner, is made in good faith, the lien will not be lost because it is subsequently ascertained that some other person is the owner. This is obviously just and proper. The lien is the creature of the statute, and creates no personal liability against anyone, but it cannot be obtained without recording a lien claim in which the name of the owner or reputed owner must be set forth, together with the location of the building, the number and size of the stories of the same, or such other matters of description as may be necessary to

identify the same, the object being, as stated in *Gault* v. *Wittman*, 34 Md. 37, "to describe the property charged with the lien with sufficient certainty to enable parties by searching the public records to ascertain the existence of the lien." But where one has done all in good faith required to advise the public of the existence of a lien against the physical property described, the lien will not be defeated because another than the person whom he had cause to believe was the owner, and whom he named as owner or reputed owner, is subsequently determined to be the true owner. The only object of the notice to the owner where the contract for work or material is made with anyone except the owner or his agent, is to enable the owner to protect himself from loss in settlement with the builder or contractor. The policy and purpose of the law is to create a lien against the property without the consent of the owner, but with notice either to the owner or reputed owner, and all proceedings for the enforcement of such liens are exclusively *in rem*. The subject-matter adjudicated is the lien upon the *rem*; its status is fixed as respects the existence of a definite lien upon a specific piece of property, in favor of a designated claimant, but the status of the *res* as to its ownership is not always necessarily fixed. The lien, once finally adjudicated, will be valid against the world, although when decree or judgment is executed, it be found that another than the reputed or ostensible owner is the true owner, unless it could be shown in appropriate proceedings to restrain the execution of the decree or judgment, that it was obtained through fraud of the lienor practiced against the true owner.

We are not dealing here with a case where all the proceedings, from first to last, concur in naming one person as absolute and unqualified owner, and we are not required to determine whether in such a case, a defeated lienor could maintain a new bill to set aside a conveyance to such alleged owner, and to have the property declared to be the property of another, in order by that means to realize his claim from any surplus after payment of other liens established by the former decree. Here none of the lienors committed them-

selves to any such absolute position, and cannot properly be regarded as occupying inconsistent positions in the two proceedings. They availed themselves of the permission given by the statute to allege either that Hensel was owner or reputed owner, or that he with others named, were owners or reputed owners. It was not necessary therefore for the Court to determine in the former case whether Hensel alone was the true, or the reputed owner, or whether he, in conjunction with others named, were the true, or the reputed owners, since in any event the claimants were entitled to liens on *the property* upon showing compliance with all the other requisites of the statute.

The precise issue sought to be raised in the present case is whether Hensel or Eckstine is the real owner of the property. The precise issue raised in the former case, was whether the lien claimants were entitled to liens on *that property*, and they were so entitled, if the proceedings were in all respects regular, and the proof adequate, whether the property belonged either to Hensel or Eckstine. It was not essential to the determination of the issue in the former case, to determine which one of these alternatives represented the real state of ownership. Unless issue was taken in the former case upon the precise point controverted in the second case, or, unless the decision of that point, though not formally put in issue, was essential to the finding of the former judgment, it cannot be regarded as conclusive in the second case. *Trayhern* v. *Colburn*, 66 Md. 277.

We have already referred to the only expressions in the opinion of the lower Court in the former case relating to the question of ownership, and it will be seen that the *decree* in that Court determined nothing whatever as to the ownership, as it should properly have done if a finding upon that point was essential to the fixing of a valid lien upon the property. The appeal in the former case was not from the *opinion*, but from the *decree*, of the Court; *Woods* v. *Fuller*, 61 Md. 460; *Martin* v. *Evans*, 85 Md. 8; and while the *opinion* of this Court on that appeal states that it seemed to be conceded by all par-

ties that Hensel and Eckstine were respectively owner and builder, the decree of this Court is silent upon that question.

· But the appellees further relied upon the established doctrine that the principle of *res judicata* extends not only to the questions of fact and law which were actually decided in the former suit, but also to the grounds of recovery and defense which might have been, but were not presented, and contended that the question whether Eckstine was the real owner of the property, as the plaintiffs in this case now allege, might have been brought into the former case by them and submitted to the determination of the Court, and in that connection they relied upon the recent case of *Nat. Marine Bank* v. *Heller, Hirsh & Co.*, reported in 94 Md. 213, in which we quoted with approval the language of JUSTICE MILLER in *Corcoran* v. *C. & O. Canal Co.*, 94 U. S. 741, holding that "in chancery suits, adverse rights as between co-defendants may be determined, and that if the parties have had a hearing, and an opportunity of asserting their rights, they are concluded by the decree so far as it affects rights presented to the Court and passed upon by its decree." That citation was directly applicable to the case then before the Court, it being a controversy between creditors participating in the distribution of a certain fund derived from the sale of the real estate of an insolvent corporation. Under a previous audit in the same case, another fund derived from the sale of personal property and insurance upon buildings on said real estate, which had been destroyed by fire, had been distributed, and out of that fund had been allowed certain taxes upon the real estate and buildings of the corporation. Heller, Hirsh & Co., filed exceptions to this previous audit on the ground that certain claims were improperly allowed, but there was no exception to the allowance of the taxes mentioned. When the second audit came up for consideration, Heller, Hirsh & Co., excepted to its ratification on the ground that the sum allowed in the previous audit for taxes upon the real estate should have been deducted from the proceeds of the real estate (all of which was distributed among the lien creditors of the company)

and should have been distributed to its general creditors *pro rata*, in order to do justice between the lien creditors and the general creditors.   But this Court held, on appeal from an order sustaining this contention, that the ratification of the previous account, and the application of the fund accordingly, operated as an adjudication not only in respect to the allowance of the taxes, but also in respect to the fund upon which they should be charged.   To that case, the language of the Supreme Court in 94 *U. S. supra*, was directly in point, but we do not think it applicable here.

If in the former case to enforce these mechanics' liens any of the plaintiffs had embraced in the bill an attempt to set aside the conveyances to Hensel as fraudulent, and to have the property therein described, declared to be the property of Eckstine, the bill would have been demurrable as multifarious, and if the plaintiffs could not have required the determination of that question, it can scarcely be contended that any of the defendants could have required its determination, and if they could not have done so, they cannot now be concluded by that decree upon the question raised in this case.

If we should extend the doctrine of *res judicata* as asked by the appellees, we should be straining the principles upon which it rests beyond their natural and proper tension, with the result of preventing an inquiry into alleged fraud, which was not, and could not have been inquired into, in the former case.

> *Decree reversed with costs to appellants above and below and cause remanded.*